THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. CHARLES FITHIAN, PLAINTIFF IN ERROR.

Submitted May 29, 1931—Decided October 19, 1931.

For the plaintiff in error, *Douglas V. Aitken.*

For the defendant in error, *W. A. W. Grier.*

The opinion of the court was delivered by

DONGES, J. This is a writ of error directed to the Salem County Court of Oyer and Terminer to review the conviction of Charles Fithian of murder in the first degree without recommendation of life imprisonment. The case is brought up on assignments of error and specifications of causes for

reversal under the one hundred and thirty-sixth section of the Criminal Procedure act. Defendant was indicted with Peter Giordano and Henry Green for the killing of J. William MacCausland in a payroll robbery. On separate trial Giordano was convicted. Green is a fugitive.

The state's case shows that on the morning of October 24th, 1930, MacCausland was attacked while walking on the street in Salem with the payroll money in his possession. Three men participated in the crime, Fithian driving the car, and the other two attacking the deceased with guns and taking the money. In the course of the attack, one shot was fired, the bullet striking deceased in the back, piercing his spine and heart, and killing him. The shot was fired at close range. The proof was clear from the defendant's testimony that the three participants plotted the crime of robbery and jointly carried out the project, each having his allotted part in the crime. The only divergence in the testimony on essentials is as to who fired the shot that caused death. In view of the admitted participation of all three, it is not material who did fire the shot.

Defendant fled to Florida but returned north with the intention of surrendering. After evading the authorities again in South Jersey, he finally surrendered on October 30th, 1930. He then made a statement which was introduced in evidence. Defendant testified at the trial and gave almost exactly the same account of the holdup and killing as that given in the statement. He said the shot was fired by Giordano, who was the ringleader instigating the crime according to Fithian.

Five assignments of error are discussed in the plaintiff in error's brief.

1. It is urged that it was error to strike out the testimony of one Alice Thomas. This testimony was offered in an attempt to prevent the admission into evidence of the confession. It was to the effect that the prosecutor of the pleas had urged Miss Thomas to endeavor to get Fithian to surrender and had said that "it would be better if Charlie Fithian would give himself up." It is urged that this is proof that the con-

fession was made under promise of leniency. However, the incident occurred before Fithian was in custody; it was made, if at all, to Fithian's family; and had to do with his surrender and not with the making of the statement offered. We are of opinion that the testimony was not relevant and that it was properly stricken.

2. It is contended that the confession was improperly received in evidence. This argument is based upon the testimony of Miss Thomas above mentioned. What was said there applies here, and furthermore, the defendant on the stand told the same story of the crime. He further testified that the confession was true, and that he made it voluntarily. The court carefully investigated the circumstances surrounding the making of the confession. Those present, including the stenographer, testified that it was made voluntarily, without threats or promises, and that defendant was warned that it would be used against him. It is clear that the admission of the statement was proper under the rules laid down in *State* v. *Murphy*, 87 *N. J. L.* 515, and the other cases on the subject.

3. It is contended that the prosecutor prejudiced the defendant by asking him questions on cross-examination concerning his relations with Alice Thomas. The purport of the questions was to inquire how well defendant knew her, how long he had known her, and how near she lived to a family named Artis with whom defendant lived for a year. While these questions may not have been relevant, it does not appear that they were harmful. They were not so framed as to suggest any improper relationship, and the answers given by defendant did not place him in a position where he was anywise prejudiced in the minds of the jurors.

4. It is urged that it was error to permit the prosecutor to cross-examine the defendant as follows: "*Q.* Do you know where Green is at present? *A.* No, sir. *Q.* Did you and Giordano do anything to Green on the way to Bridgeton that morning? *A.* No, sir. *Q.* You didn't shoot him? *A.* No, sir." Green has never been captured. It is argued that this line of questions was asked with a view to arousing the jury

against defendant. Fithian had testified on direct examination concerning the movements of himself and the other two participants after the shooting, so this was a proper subject of cross-examination. Particularly so, in view of the fact that Fithian testified that Giordano had made threats against the other two. In any event, we do not think that it can be said that the defendant was prejudiced by the questions. The court said in his charge that the jury "should, in the event you have not done so, eliminate from your minds all feeling of prejudice or favor that may have been engendered by what has been said to you, by what you may have read, by what has been told to you of the nature of the killing, the circumstances of it, the personality of the deceased and of the defendant and his fellows in crime." There was no harmful error in permitting these questions.

5. It is argued that the verdict is against the weight of the evidence. We think there is no merit in this point. Taking the defendant's own story on direct examination in the light most favorable to him, he was guilty of murder in the first degree. He admitted being present and actively participating in a robbery; in the course of that robbery a homicide was committed. The state's proofs were full and convincing and the defendant produced no testimony which throws any doubt upon his guilt.

The record discloses that plaintiff in error had a full and fair trial, with every opportunity to fully defend himself, and free of any harmful error.

The judgment is affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ.    14.

*For reversal*—None.